UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOLI REID, individually and on
behalf of a class,

      Plaintiff,

v.                            Civil Case No. 19-13018
                                   Honorable Linda V. Parker

GENERAL MOTORS LLC,

      Defendant.

_____/

## OPINION & ORDER GRANTING GENERAL MOTORS LLC'S MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT (ECF NO. 15)

Plaintiff Joli Reid filed this putative class action lawsuit against Defendant General Motors LLC ("GM"), averring that GM's Flex Fuel vehicles—which were "supposedly designed to operate on E85 (85% ethanol fuel)"—"cannot consistently use E85 fuel without engine damage."   (Am. Compl., ECF No. 8 at Pg. ID 79 ¶ 1.) Plaintiff alleges (i) breach of limited written warranty; (ii) breach of express warranty; (iii) breach of implied warranty of merchantability; (iv) fraud; and (v) deceptive trade practices.   (*Id.* at Pg. ID 87-102.)

The matter is presently before the Court on GM's Motion to Dismiss Plaintiff's First Amended Class Action Complaint.   (ECF No. 15.)   The motion has been fully briefed.   (ECF Nos. 17, 18.)   For the reasons that follow, the Court grants the motion.

## FACTUAL BACKGROUND

GM has marketed and sold millions of Flex Fuel vehicles throughout the United States.   (ECF No. 8 at Pg. ID 81 ¶¶ 16, 47.)   GM has publicly stated that Flex Fuel vehicles can use E85 fuel or gasoline.[1]   (*Id.* at Pg. ID 82 ¶ 17.)   Since 2006, these vehicles have been equipped with "yellow, corn-colored" filler caps, which Plaintiff alleges "signify that they take E85 fuel."   (*Id.* at Pg. ID 85 ¶¶ 43, 52 (citing Ex. G, Pg. ID 135-37).)   Also since 2006, GM "aggressively" promoted the benefits of Flex Fuel and "[a]ll purchasers of [] Flex Fuel vehicles necessarily receive[d] representations from GM" that Flex Fuel vehicles can be "safely," "reliably," and "regularly operated on E85 [fuel]."   (*Id.* at Pg. ID 85 ¶¶ 42-43, 51 (citing Ex. G, Pg. ID 135-37; Ex. H, Pg. ID 138-41).)   According to Plaintiff, "[t]here is substantial public demand for Flex Fuel vehicles, which are perceived as environmentally friendly."   (*Id.* at Pg. ID 85 ¶ 44.)

Plaintiff further alleges that the following statements are typical of those in Flex Fuel owners' manuals (*id.* at Pg. ID 83 ¶ 23):

- "Vehicles with fuel caps marked as 'E85' or FlexFuel can use either unleaded gasoline or ethanol fuel containing up to 85% ethanol (E85).   All other vehicles should use only the unleaded gasoline as described in Fuel → 189. []The use of E85 or FlexFuel is encouraged when the vehicle is designed to use it.   E85 or FlexFuel is made

---

1 Plaintiff alleges that this is the "accepted meaning" of "Flex Fuel."   (ECF No. 8 at Pg. ID 82 ¶ 17.)

from renewable sources."

- "Because E85 or FlexFuel has less energy per liter (gallon) than gasoline, the vehicle will need to be refilled more often. . . ."

- "The starting characteristics of E85 or FlexFuel make it unsuitable for use when temperatures fall below -18 °C (0 °F).  Use gasoline or add gasoline to the E85 or FlexFuel."

(*Id*. at Pg. ID 82 ¶¶ 20-22 (citing Ex. B, Pg. ID 111-12).)

On or about June 29, 2019, Plaintiff purchased a used 2017 Chevrolet Equinox Flex Fuel vehicle from Feldman Chevrolet Livonia ("Feldman Chevrolet"), an authorized GM dealer.  (*Id*. at Pg. ID 81 ¶ 11.)  Plaintiff executed a retail installment contract.  (*Id.* at Pg. ID 81 ¶ 14 (citing Ex. A, Pg. ID 105-10).) At the time, the vehicle had 18,957 miles and had been in service less than 36 months.  (*Id*. at Pg. ID 81 ¶ 13.)  Plaintiff alleges that, as a result of GM's representations, she understood prior to her purchase that the vehicle could run on E85 fuel or gasoline.[2]  (*Id.* at Pg. ID 82 ¶ 18.)

Plaintiff further alleges that all 2016 and newer Chevrolet vehicles come with a 5-year/60,000-mile (whichever comes first) transferable "Limited Powertrain Warranty" ("LP Warranty"), as well as a 36,000 mile/3-year (whichever comes

---

2  Plaintiff notes that GM publishes the owner's manual for the 2017 Chevrolet Equinox Flex Fuel vehicle on the internet.  (ECF No. 8 at Pg. ID 82 ¶ 19.)

first) transferable "New Vehicle Limited Warranty" ("NVL Warranty").[3]   (*Id*. at Pg. ID 83 ¶ 24 (citing Ex. C, 113-17).)   According to Plaintiff, the warranty covers repairs to correct any vehicle defect (other than slight noise, vibrations, or other normal characteristics of the vehicle) due to materials or workmanship occurring during the warranty period.   (*Id*. at Pg. ID 83 ¶ 25.)   Plaintiff claims that this warranty is "typical" of GM warranties.   (*Id*. at Pg. ID 83 ¶ 26.)   GM contracts with GM dealers to perform warranty repairs and directs consumers to bring their vehicle to a GM dealer if they require service or repairs under the warranty.   (*Id.* at Pg. ID 84 ¶¶ 33-34.)

    In August 2019, after filling up her vehicle with E85 fuel at the only gas station Plaintiff used and "making normal use of the vehicle" presumably thereafter, check engine and warning lights came on.   (*Id*. at Pg. ID 83 ¶¶ 28-29.)   At this time, the temperature was well in excess of -18 °C (0 °F).   (*Id.* at Pg. ID 84 ¶ 30.) On August 28, 2019, with 24,096 miles on the odometer, Plaintiff brought the vehicle to Feldman Chevrolet.   (*Id.* at Pg. ID 84 ¶ 31.)   The service department found that the "plunger for the high pressure fuel pump is sticking due to the use of E-85."   (*Id.* (citing Ex. D, Pg. ID 118-20).)   The service department further found

---

3  Plaintiff notes that "[t]he GM limited written warranty expressly extends to the future performance of the GM vehicle, for the periods specified in the warranty." (ECF No. 8 at Pg. ID 87 ¶ 56.)

that contaminated fuel needed to be removed from the tank and charged Plaintiff $ 915.03 for the repairs.   (*Id.* at Pg. ID 84 ¶ 35.)   On September 3, the State of Michigan collected a sample of the E85 fuel sold at the gas station where Plaintiff filled up her vehicle.   (*Id.* at Pg. ID 84 ¶ 37 (citing Ex. E, Pg. ID 121-28).)   After analyzing it, the State found that the fuel sample "met [the] sample acceptability requirements" for E85 fuel.   (*Id.*)

Plaintiff alleges that "internal GM documents state that 'excessive use of E85' [fuel] may 'caus[e] a plunger internal to the fuel pump to stick.'"[4]   (*Id.* at Pg. ID 79 ¶ 3, 85 at ¶ 38 (citing Ex. F, Pg. ID 129-34).)   This issue, Plaintiff alleges, can result in costly damage and was not disclosed to consumers.   (*Id.* at Pg. ID 79 ¶ 4, 85 at ¶ 39.)   Rather, consumers learned of it only after incurring engine damage. (*Id.* at Pg. ID 79-80 ¶ 4.)   Moreover, since prior to the time Plaintiff's vehicle was manufactured or sold to her, GM knew of the "[p]roblems with Flex Fuel vehicles malfunctioning while using E85 fuel."   (*Id.* at Pg. ID 86 ¶ 48 (citing Ex. I, Pg. ID 142-44).)   In fact, "[t]he problems were sufficiently widespread that GM issued

---

4  According to Exhibit F, this issue affects the following vehicles:   Buick LaCrosse (2012 to 2016), Buick Regal (2012 to 2017), Buick Verano (2012 to 2017), Cadillac ATS (2013 to 2015), Cadillac SRX (2012 to 2016), Chevrolet Caprice PPV (2012 to 2017), Chevrolet Captiva (VIN L) (2012 to 2015), Chevrolet Captiva (2016 to 2018), Chevrolet Equinox (2011 to 2017), Chevrolet Impala (2012 to 2019), GMC Terrain (VIN L) (2011), and GMC Terrain (2012 to 2017).   (Ex. F, ECF No. 8 at Pg. ID 130-131.)

Exhibit I [("Repeat P228C Setting On High Feature V6 Engines While Using E85

Fuel")] and Exhibit F [("Reduced Engine Power, Reduced Engine Power Displayed

on Drive Information Center [], Malfunction Indicator Lamp [] Illuminated")][5] to

inform all GM dealers of the problems." (*Id.* at Pg. ID 86 ¶ 49 (citing Ex. I, Pg. ID

142-44; Ex. F, Pg. ID 129-34.)   Notwithstanding this knowledge, "GM continued

promoting and selling Flex Fuel vehicles as capable of safely and reliably operating

on E85 fuel as long as the outside temperature was not below -18 °C (0 °F)." (*Id.*

at Pg. ID 86 ¶ 50.)   "GM could readily have notified Flex Fuel vehicle owners that

they should fill their vehicles with gasoline at periodic intervals.   However, doing

so would have diminished the public desire for Flex Fuel vehicles." (*Id.* at Pg. ID

87 ¶ 55.)   Instead, per Plaintiff's information and belief, GM instructed GM dealers

to blame Flex Fuel problems on contaminated fuel. (*Id.* at Pg. ID 84 ¶ 36.)

Plaintiff avers that, had she known of this problem, Plaintiff would not have

purchased a Flex Fuel vehicle and would not have paid as much for it. (*Id.* at Pg.

ID 87 ¶ 54.)

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of

the complaint. *RMI Titanium Co. v. Westinghouse Elec. Corp.*, 78 F.3d 1125,

---

5 This bulletin notes that it "only applies to vehicles that utilize E85 fuel." (ECF
No. 8 at Pg. ID 130.)

1134 (6th Cir. 1996).    Under Federal Rule of Civil Procedure 8(a)(2), a pleading

must contain a "short and plain statement of the claim showing that the pleader is

entitled to relief."    To survive a motion to dismiss, a complaint need not contain

"detailed factual allegations," but it must contain more than "labels and

conclusions" or "a formulaic recitation of the elements of a cause of action . . .."

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).    A complaint does not

"suffice if it tenders 'naked assertions' devoid of 'further factual enhancement.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 557).

As the Supreme Court provided in *Iqbal* and *Twombly*, "[t]o survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to

'state a claim to relief that is plausible on its face.'"    *Id*. (quoting *Twombly*, 550

U.S. at 570).    "A claim has facial plausibility when the plaintiff pleads factual

content that allows the court to draw the reasonable inference that the defendant is

liable for the misconduct alleged."    *Id*. (citing *Twombly*, 550 U.S. at 556).    The

plausibility standard "does not impose a probability requirement at the pleading

stage; it simply calls for enough facts to raise a reasonable expectation that

discovery will reveal evidence of illegal [conduct]."    *Twombly*, 550 U.S. at 556.

In deciding whether the plaintiff has set forth a "plausible" claim, the court

must accept the factual allegations in the complaint as true.    *Erickson v. Pardus*,

551 U.S. 89, 94 (2007).    This presumption is not applicable to legal conclusions,

however.   *Iqbal*, 556 U.S. at 668.   Therefore, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id*. (citing *Twombly*, 550 U.S. at 555).

Ordinarily, the court may not consider matters outside the pleadings when deciding a Rule 12(b)(6) motion to dismiss.   *Weiner v. Klais & Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997) (citing *Hammond v. Baldwin*, 866 F.2d 172, 175 (6th Cir. 1989)).   A court that considers such matters must first convert the motion to dismiss to one for summary judgment.   *See* Fed. R. Civ. P 12(d).   However, "[w]hen a court is presented with a Rule 12(b)(6) motion, it may consider the [c]omplaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to [the] defendant's motion to dismiss, so long as they are referred to in the [c]omplaint and are central to the claims contained therein."   *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008).   The court may take judicial notice only "of facts which are not subject to reasonable dispute."   *Jones v. Cincinnati*, 521 F.3d 555, 562 (6th Cir. 2008) (citation omitted).

## ANALYSIS

### Breach of Limited Written Warranty (Count I)
### Breach of Express Warranty (Count II)
### Breach of Implied Warranty of Merchantability (Count III)

Michigan Compiled Laws § 440.2607(3)(a) states that a buyer "must within a

8

reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy." Two policies underlie this notice requirement. "First, express notice opens the way for settlement through negotiation between the parties. . . . Second, proper notice minimizes the possibility of prejudice to the seller by giving him 'ample opportunity to cure the defect, inspect the goods, investigate the claim or do whatever may be necessary to properly defend himself or minimize his damages while the facts are fresh in the minds of the parties.'" *Standard All. Indus., Inc. v. Black Clawson Co.*, 587 F.2d 813, 826 (6th Cir. 1978) (citations omitted).

The Sixth Circuit has noted that "the policies underpinning the statute reinforce [its] opinion that notice of breach is a condition precedent to any remedy for breach of a contract involving the sale of goods when those goods have been accepted." *Roth Steel Prod. v. Sharon Steel Corp.*, 705 F.2d 134, 152 (6th Cir. 1983). "Any remedy includes filing suit." *Johnston v. PhD Fitness, LLC*, No. 16-CV-14152, 2018 WL 646683, at *3 (E.D. Mich. Jan. 31, 2018) (citing *American Bumper & Mfg. Co. v. Transtechnology Corp.*, 652 N.W.2d 252, 256-57 (Mich. Ct. App. 2002)); *see also Standard All.*, 587 F.2d at 827 ("UCC [§] 2-607's notice requirement is designed to forestall the very difficulties which develop[] [during litigation].").

Regarding what notice must look like, Comment 4 of Uniform Commercial

9

Code § 2-607, from which Michigan Compiled Laws § 440.2607 was derived,

*Gorman v. Am. Honda Motor Co*., 839 N.W.2d 223, 229 (Mich. Ct. App. 2013),

states:

> The content of the notification need merely be sufficient to let the seller know that the transaction is still troublesome and must be watched.   There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer . . . . Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this Article *need only be such as informs the seller that the transaction is claimed to involve a breach*, and thus opens the way for normal settlement through negotiation.

U.C.C. § 2-607 (emphasis added).

GM claims that Counts I, II, and III fail because Plaintiff notified GM of the alleged breach via a letter dated October 11, 2019, but the letter was delivered to GM only on October 15, after this suit was filed.   (ECF No. 15 at Pg. ID 177.) GM argues that this letter does not satisfy the requirement that a buyer "must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy."   (*Id.* at Pg. ID 176-78 (quoting Mich. Comp. Laws § 440.2607(3)(a)).)   Plaintiff proffered no substantive argument contesting GM's position as to the letter.   (*See* ECF No. 17 at Pg. ID 274); *see also McPherson v. Kelsey*, 125 F. 3d 989, 995 (6th Cir. 1997) ("[I]ssues adverted to in a

10

perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Plaintiff nevertheless argues that "Feldman Chevrolet, as an authorized GM dealer, is an agent of GM for the purpose of honoring (or not honoring) the GM warranty" and GM was effectively given notice of the breach when she took her vehicle to Feldman Chevrolet for repairs and Feldman Chevrolet refused to honor the LV and/or NVL Warranties.   (ECF No. 17 at Pg. ID 272-74.)   The Court finds this argument unpersuasive.

"The notice 'of the breach' required is not of the facts, which the seller presumably knows quite as well as, if not better than, the buyer, but of buyer's claim that [the facts] constitute a breach."   *Standard All.*, 587 F.2d at 825 (citation omitted) ("The critical issue is whether Black Clawson had notice that it was considered to be in breach."); *see also K & M Joint Venture v. Smith Int'l., Inc*., 669 F.2d 1106, 1113 (6th Cir. 1982) (explaining that the critical question under Uniform Commercial Code § 2-607 is whether the seller has been informed that the buyer considered the seller in breach).   Pre-suit notice would have alerted GM to the fact that Plaintiff thought the failure of her vehicle to operate as expected when she used E85 fuel and being charged for the repairs by Feldman Chevrolet constituted breach of one or more warranties.   (*See* ECF No. 8 at Pg. ID 87, 90, 94.)   But Plaintiff does not allege that—prior to initiating litigation—she told GM or Feldman

Chevrolet that these alleged facts constituted breach of the warranties.[6]   If she had,

at that point, the parties could have discussed settlement and GM could have cured

the defect or sought evidentiary support for its position that it had not breached the

warranties.   Notably, Michigan courts have found notice inadequate where "the

notice did not satisfy the policies underlying the notice requirement."   *Gorman*,

839 N.W.2d at 231 (citing and discussing *American Bumper*, 652 N.W.2d 252).

Here, by failing to provide adequate notice, Plaintiff deprived GM of the

opportunity to cure the non-conformance, investigate the claim, or commence

settlement negotiations *prior to litigation*.   *See Johnston*, 2018 WL 646683, at *4

("[T]he notice requirement is designed to encourage [] negotiations [and claim

investigation] before—not during—litigation.").

---

6 In fact, according to the October 11, 2019 letter delivered to GM on October 15
(one day after this suit was filed on October 14), Plaintiff paid for the repairs (on or
around August 28) and then had the State of Michigan test E85 fuel from the
relevant gas station.   (*See* Ex. J, ECF No. 8 at Pg. ID 146.)   On or around
September 25, the State of Michigan informed Plaintiff that the gas was "pure and
compliant" with E85 specifications.   (*Id.*; *see also* Ex. E, ECF No. 8 at Pg. ID 122.)
It was *only then* that Plaintiff realized that the problem was not caused by "debris in
the fuel," but instead was caused by the engine.   (*See* Ex. J, ECF No. 8 at Pg. ID
146.)   It was only then that Plaintiff realized she should not have paid for the
repairs, and GM's failure to cover the repairs constituted breach of the warranties.
(*Id.*)   This means that, sometime between September 25 and October 14, Plaintiff
should have provided GM with notice that its failure to apply the warranty to the
repair costs and the fact that her car could not "consistently" use E85 fuel
constituted breach of the warranties.   Notably however, Plaintiff has not alleged
that she returned to Feldman Chevrolet, called GM, or took any other action to
provide such notice.

Even if GM and/or Feldman Chevrolet knew that refusing to honor the LV and/or NVL Warranties constituted a breach, Plaintiff's claims still fail.   As one Michigan court explained, "[i]t is clear from reading comment 4 in its entirety that the seller must be given actual notice that the buyer believes that the seller is in breach. . . . The express language . . . mandate[s] notice regardless of whether either or both parties had actual knowledge of the breach."   *Gorman*, 839 N.W.2d at 231-32 (quoting *Standard All.*, 587 F.2d at 825).

In sum, Plaintiff's failure to provide notice within a reasonable period of time as contemplated by Michigan Compiled Laws § 440.2607(3)(a) is fatal to her breach-of-warranty claims and bars her from "any remedy" for the alleged breaches.   *See Gorman*, 839 N.W.2d at 229 (same).   Accordingly, the Court grants GM's motion as to Counts I, II, and III.

### **Fraud (Count IV)**

The First Amended Complaint does not make clear whether Plaintiff is pursuing a fraudulent misrepresentation claim or a fraud by omission claim.   The Court thus discusses both.

#### *(i) Fraudulent Misrepresentation*

To establish a claim for fraudulent misrepresentation, a plaintiff must allege:

> (1) [t]hat defendant made a material misrepresentation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without knowledge of its truth

and as a positive assertion; (4) that he made it with the
intention that it should be acted upon by plaintiff; (5) that
plaintiff acted in reliance upon it; and (6) that he thereby
suffered injury.

*Lawrence M. Clarke, Inc. v. Richco Constr., Inc*., 803 N.W.2d 151, 162 (Mich.

2011) (citation omitted).

According to the Amended Complaint, the essence of the representation at

issue is that Flex Fuel vehicles can use E85 fuel or gasoline.   Plaintiff alleges that

GM made various forms of this representation via three different mediums—

specifically, owners' manuals, promotional materials, and by including a yellow

filler-cap in each Flex Fuel vehicle (ECF No. 8 at Pg. ID 82-83 ¶¶ 20-23, 85-86 ¶¶

42-43, 51-52)—and GM knew this representation was false because internal GM

documents revealed that "excessive use of E85" may "caus[e] a plunger internal to

the fuel pump to stick."   (*Id*. at Pg. ID 79 ¶ 3, 85 ¶ 38 (citing Ex. F, Pg. ID 129-

34).)

Notably, in the Amended Complaint, Plaintiff alleges that GM represented

that Flex Fuel vehicles "could be *consistently* used" with E85 fuel or gasoline.   (*Id.*

at Pg. ID 79 ¶ 1, 85 ¶ 45, 97 ¶¶ 98, 101 (emphasis added).)   But none of the

exhibits attached to the Amended Complaint contain representations by GM that

E85 can be used "consistently."   (*See id.* at Pg. ID 112, 119, 131-32, 136, 140,

143.)

In *Hord v. Environmental Research Institute of Michigan*, a representative of the defendant interviewed the plaintiff for a job, provided him with information about the company (including an operating summary containing financial data), and later extended a job offer to the plaintiff.    617 N.W.2d 543, 545 (Mich. 2000). The plaintiff accepted the job, but the defendant—for economic reasons—laid the plaintiff off a year after he began.    *Id*.    The plaintiff sued, alleging that the defendant misrepresented its financial soundness.    *Id*.    The Michigan Court of Appeals concluded that the plaintiff presented evidence sufficient to establish fraudulent misrepresentation.    *Id*. at 551.    The Supreme Court of Michigan reversed, explaining in relevant part:

> There is no claim whatsoever that the financial statement covering the fiscal year ending in 1991 was in any way false or misleading.   The plaintiff says he inferred from it that [the defendant's] current financial condition was consistent with that statement.   However, the statement itself is not a representation to that effect.   Thus, the claim of fraudulent misrepresentation must fail because [the defendant] did not make any false statement. . . . Fraudulent misrepresentation, of course, requires a *false representation* by the defendant.  A plaintiff's subjective misunderstanding of information that is not objectively false or misleading cannot mean that a defendant has committed the tort of fraudulent misrepresentation.

*Id.* at 549 (emphasis in original).

Here, Plaintiff cannot establish her misrepresentation claim based on GM's statements that Flex Fuel vehicles can use E85 fuel or gasoline because the

representation was not false.    GM only represented that Flex Fuel vehicles "can"

use E85 fuel.    Plaintiff may have thought that "can" meant "consistently," or in

every instance in which a Flex Fuel vehicle requires fuel, and that doing so would

not result in mechanical issues.    But, as the Michigan Supreme Court has

explained, "[a] plaintiff's subjective misunderstanding of information that is not

objectively false or misleading cannot mean that a defendant has committed the tort

of fraudulent misrepresentation."    *Hord*, 617 N.W.2d at 549; *see also MacDonald*

*v. Thomas M. Cooley Law Sch.*, 724 F.3d 654, 663 (6th Cir. 2013) (affirming the

district court's finding of no fraudulent misrepresentation based on *Hord*).[7]

### *(ii) Fraud by Omission*

Under Michigan law, "[s]ilent fraud is essentially the same [as fraudulent

misrepresentation] except that it is based on a defendant suppressing a material fact

that he or she was legally obligated to disclose, rather than making an affirmative

misrepresentation."    *Tocco v. Richman Greer Prof'l Ass'n*, 553 F. App'x 473, 476

(6th Cir. 2013) (second alternation in original) (quoting *Alfieri v. Bertorelli*, 813

N.W.2d 772, 775 (Mich. Ct. App. 2012)).    This cause of action prohibits "[a] fraud

---

7 These allegations might support a claim for breach of implied warranty of
merchantability based on failure to warn that "excessive use" of E85 fuel could
cause mechanical issues.    (*See* ECF No. 17 at Pg. ID 270-71.)    However, for the
reasons set forth above, Plaintiff is barred from asserting such a claim.

arising from the suppression of the truth[,]" which can harm a plaintiff as much as "that which springs from the assertion of a falsehood."  *Lorenzo v. Noel*, 522 N.W.2d 724, 725 (Mich. Ct. App. 1994) (quoting *Williams v. Benson*, 141 N.W.2d 650, 654 (Mich. Ct. App. 1966)).

In order to establish a claim for silent fraud, a plaintiff must allege facts showing: (i) "a pre-existing legal or equitable duty to disclose"; (ii) "suppression of information with the intent to defraud"; (iii) "reasonable reliance upon defendant's performance of the duty"; and (iv) "damages caused by the suppression of the information."  *Tocco*, 553 F. App'x at 476-77 (citations omitted).  "Whether a duty to disclose exists is a question of law."  *5504 Reuter, L.L.C. v. Deutsche Bank Nat. Tr. Co.*, No. 317854, 2014 WL 7215197, at *4 (Mich. Ct. App. Dec. 18, 2014) (citation omitted).  The Court's analysis as to this claim begins and ends with the first element because Plaintiff has not alleged sufficient facts to establish that GM possessed "a pre-existing legal or equitable duty to disclose" that Flex Fuel vehicle owners should fill their vehicles with gasoline at periodic intervals.

In Michigan, "when [a] [seller] and purchaser have generally discussed the condition at issue—when the purchaser has expressed some particularized concern or made a direct inquiry"—the seller has a duty to "fully disclose the material facts within the seller's knowledge related to the condition."  *M&D, Inc. v. W.B. McConkey*, 585 N.W.2d 33, 38 (Mich. Ct. App. 1998) (citing *Groening v. Opsata*,

34 N.W.2d 560 (Mich. 1948)).    As an initial matter, Plaintiff does not allege that she and GM or Feldman Chevrolet discussed anything regarding her vehicle or Flex Fuel vehicles in general.    Plaintiff also does not allege that she made a "direct inquiry" regarding whether the vehicles required gasoline.    And Plaintiff's response brief does not put forward any intelligible argument regarding whether she expressed a "particularized concern" as to the matter.

But even accepting as true that (i) Flex Fuels were sold at a premium; (ii) the "accepted meaning" of "Flex Fuel" is that such vehicles can use E85 fuel or gasoline; (iii) "[t]here is substantial public demand" because Flex Fuel vehicles are "perceived as environmentally friendly; and (iv) had Plaintiff known of the problem related to not using gasoline periodically, she would not have purchased a Flex Fuel vehicle, (ECF No. 8 at Pg. ID 82 ¶ 17, 85 ¶ 44, 87 ¶ 54), the Court finds that these allegations do not amount to the expression of a "particularized concern."    This is because a "review of Michigan Supreme Court precedent regarding this issue reveals that, *in every case*, the fraud by nondisclosure was based upon statements by the [seller] that were made in response to a *specific inquiry* by the purchaser." *M&D*, 585 N.W.2d at 39 (emphasis added); *see also First Presbyterian Church of Ypsilanti v. H.A. Howell Pipe Organs, Inc.*, No. 07-13132, 2010 WL 973466, at *2 (E.D. Mich. Mar. 16, 2010) (discussing the same).    Plaintiff does not cite a single case in which a duty to disclose arose under circumstances such as the one at bar,

18

where a plaintiff at no point presented a "specific inquiry" to be answered by a defendant.   Because Plaintiff failed to allege any facts showing that she made "specific inquiries" that might arguably amount to the "expression of a particularized concern," GM had no duty to disclose that Flex Fuel vehicles required gasoline at periodic intervals and, thus, Plaintiff's silent fraud claim fails.

## **Deceptive Trade Practices (Count V)**

Under Michigan Compiled Laws §§ 445.903(1)(c), (s), and (c)(c), which codified portions of the Michigan Consumer Protection Act ("MCPA"), parties engaged in trade or commerce may not:

> (c) Represent[] that goods or services have . . . characteristics, . . . uses, [and] benefits . . . that they do not have; . . .
>
> (s) Fail[] to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer; . . .
>
> (c)(c) Fail[] to reveal facts that are material to the transaction in light of representations of fact made in a positive manner. . . .

(*See* Am. Compl., ECF No. 8 at Pg. ID 100 ¶ 114.)   Notably, Michigan Compiled Laws § 445.904(1)(a) states that the MCPA "does not apply to . . . [a] transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or the United States."

19

GM argues that Plaintiff's deceptive trade practices claim fails because it is premised on a motor vehicle sale, which is "specifically authorized" and thus is exempt from the MCPA.   (ECF No. 15 at Pg. ID 193-94.)   In *Smith v. Globe Life Insurance Company*, the Michigan Supreme Court explained:

> [T]he relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited.

597 N.W.2d 28, 38 (Mich. 1999) (citations omitted).

Here, the "specific misconduct" alleged includes stating that Flex Fuel vehicles can run on E85 fuel or gasoline, while failing to reveal that such vehicles should be filled with gasoline at periodic intervals.   The "general transaction" at issue is the manufacture, sale, or lease of a vehicle.   Notably, Plaintiff does not dispute that the manufacture, sale, or lease of a vehicle is "specifically authorized" by law. (*See* ECF No. 17 at Pg. ID 282-84.)

To the extent that a statute or regulation prohibits specific conduct while engaged in a "general transaction," the statute "assume[s] the propriety of such [general] transaction[s]" when conducted in compliance with the specific prohibitions.   *Liss v. Lewiston-Richards, Inc.*, 732 N.W.2d 514, 520 n.39 (Mich. 2007).   In other words, even if companies like GM are prohibited from engaging

20

in the alleged misconduct at bar, this does not mean that the manufacture, sale, and lease of vehicles is not "specifically authorized."

Accordingly, the Court finds that Plaintiff's deceptive trade practices claim fails as it is premised on the sale of a vehicle.

## CONCLUSION

For the reasons set forth above, the Court finds that Plaintiff's claims cannot withstand GM's Motion to Dismiss.

Accordingly,

**IT IS ORDERED** that General Motors LLC's Motion to Dismiss Plaintiff's First Amended Class Action Complaint (ECF No. 15) is **GRANTED**.

**IT IS FURTHER ORDERED** that Counts I, II, III, and V are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that Count IV is **DISMISSED WITHOUT PREJUDICE**.

**IT IS SO ORDERED**.

s/ Linda V. Parker_____
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: September 30, 2020